ALICE JANE WILLCUTTS, Plaintiff-Appellant, *v.* MORTON DOUGLAS
WILLCUTTS, JR., Defendant-Appellee.

Third District    Nos. 79-779, 79-773 cons.

Opinion filed September 17, 1980.

William E. Stewart, of Kewanee, for appellant.

Ronald Henson, of Barash & Stoerzbach, of Galesburg, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This appeal involves a post-divorce dispute over custody and child support. Plaintiff Alice Jane Willcutts and defendant Douglas Willcutts, Jr., were divorced in 1971, and custody of their eight children was awarded to defendant. The decree of divorce incorporated a marital settlement agreement which contained the following provision:

> "Consistent with the abilities and wishes of the children, [defendant] shall have the sole responsibility for their college and postgraduate education."

The agreement specified that the father shall have the "right to direct the secular and religious education" of the children, gave the mother the right to visit at reasonable times and places, and contained numerous other provisions not involved in this appeal. Plaintiff and defendant both reside in Galesburg, Illinois, where defendant is a physician. Plaintiff has since remarried, and the decree has twice been amended to provide more definite visitation rights for the mother.

In December of 1977 plaintiff petitioned for a modification of the decree to place custody of Brian (17 years), Sharon (16), John (15), Kevin (14) and Maureen (12) with her. An amended petition to modify was filed May 23, 1978, and it also sought a change in custody of the five younger children. Following a hearing, plaintiff's request was denied on August 3, 1978. In January of 1979, plaintiff filed a petition for rule to show cause wherein she asserted that defendant was wilfully refusing to pay the 1978-79 college expenses of their son Brian at Illinois Wesleyan University and that defendant had repeatedly and wilfully refused to allow plaintiff

to exercise her full visitation rights. After a hearing, plaintiff's petition was denied on February 9, 1979.

On March 26, 1979, plaintiff again filed a rule to show cause seeking a contempt order because of defendant's refusal to pay Brian's 1978-79 expenses at Illinois Wesleyan. A few days later, on April 2, 1979, plaintiff filed a petition to modify the decree by changing custody of John, Kevin and Maureen to her along with support payment for them and by ordering payment of Brian's college expenses. The petition alleged that defendant had failed to give plaintiff her full visitation rights, that he has repeatedly cohabited with a woman to whom he is not married in the presence of the minor children, and that he has repeatedly abused the children verbally. Later plaintiff filed an affidavit in support of her petition to modify custody, asserting that defendant's physical abuse and mistreatment of the children caused John to leave home and caused Kevin and Maureen to live in fear and anxiety. A hearing was held, and on July 9, 1979, the trial court ruled that plaintiff's amended petition for rule to show cause was barred by the prior judgment in February 1979 on the same issues and that, as to the petition for a change of custody, the evidence was insufficient to satisfy the requirements of section 610 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610). The court also denied the petition to change custody and ordered both John and Brian to return to defendant's home forthwith.

Plaintiff has appealed from the order entered on July 9, 1979, and also from a supplemental order of the circuit court which denied her request for attorney's fees. We have consolidated the two appeals.

The first error assigned is the denial of plaintiff's request that she be awarded custody of John, Kevin and Maureen. She insists that the evidence established that the best interests of the children required a change of custody and also that the court applied the wrong standard for determining change of custody. Modification of a prior custody award is now governed by section 610 of the Marriage and Dissolution of Marriage Act, which provides as follows:

"(a) No motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.

(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the

court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him.

(c) Attorney fees and costs shall be assessed against a party seeking modification if the court finds that the modification action is vexatious and constitutes harassment." Ill. Rev. Stat. 1979, ch. 40, par. 610.

■■ According to plaintiff, the trial judge stated that he did not believe that the best interest of the children is the test, and it was error to reject the "best interest" test in the face of the express provision of section 610(b) retaining that standard. Plaintiff refers to an oral comment made by the trial judge as he took a motion under advisement. The court referred to section 610 and indicated that "best interest" is not the sole consideration here. In this case, where plaintiff is seeking to modify a prior custody judgment, the statute requires, in addition to a finding of best interest, either the custodian's consent (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)(1) and (2)) or a finding that the child's present environment seriously endangers his physical, mental, moral or emotional health (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)(3)). Thus the trial court was correct in stating that there are additional considerations under the new Marriage Act. We also note that the court announced its decision as to John in the following words:

"[I am] really not so much concerned about the wishes of your parents as I am about your best interests. The law leaves that question up to me as to what is your best interest between two competing parents. Judges in the past have awarded your custody to your father and the right to direct your education. And I have, after hearing this evidence, which is the only thing that I have to go on, determined that there has not been a change of circumstances that would affect your best interests."

From these words, we must conclude that as to John, the trial court quite clearly applied the appropriate standard, and we see nothing in the record to indicate that any different legal standard was applied as to Kevin and Maureen.

■■ Furthermore, a review of the record discloses that the trial court did not abuse its discretion in finding that plaintiff failed to meet her burden of proof under section 610. Without reciting the details of the evidence, we think it fair to say that plaintiff, defendant, John, Brian, Sharon, Maureen and Kevin each testified to the strict discipline and high

standards of conduct insisted upon by defendant; to the good grades received by the children; to the household chores assigned by defendant; to the fact that defendant's fiancée occasionally spent the weekend and shared defendant's bedroom; and to the serious disagreements between John and defendant. The testimony also indicated that John at age 16 was brought home dead drunk one afternoon; that he was involved to some extent in the use of drugs; and that he became very withdrawn and insolent. On two different occasions he provoked his father into slapping him. Finally John ran away from defendant's home and went to live with plaintiff, where he was allowed to take a restaurant job that kept him out until midnight on school nights, was allowed to drop out of high school sports, and was given considerably more freedom. Plaintiff said she had no trouble with John. While John at 16 years of age was in an all-too-familiar state of rebellion against his father's disciplinary standards, we are not prepared to say that the mother's lack of discipline was a better solution for a wilful boy.

■■ We can find nothing to indicate that the children's present environment endangered their physical, mental, moral or emotional health other than the fact that defendant's fiancée has stayed overnight several times. The trial court found that there was no evidence of any negative effect on the children as a result of defendant's conduct with his fiancée. The Illinois Supreme Court in *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, ruled that tangible evidence of a contemporaneous adverse effect on minor children was not necessary where the mother maintained open and continuing cohabitation with her boyfriend. In *Jarrett* the trial court had granted a change of custody, and the supreme court affirmed that decision as not contrary to the manifest weight of the evidence. We agree with the rationale of the *Jarrett* opinion (see *Gehn v. Gehn* (1977), 51 Ill. App. 3d 946, 367 N.E.2d 508), and we particularly agree that a parent's "moral indiscretions" may affect the mental, moral and emotional health of his children and may damage the moral development of their character. However, we believe the case at bar must be distinguished from *Jarrett* on the basis of the factual situation here where the father's conduct was not "open and continuing cohabitation," but rather occurred upon an occasional weekend. In *Jarrett* the court observed that custody should not necessarily be denied to every parent who has violated the community's moral standards. We believe each case must be decided upon a consideration of all the circumstances affecting the best interest of the children. Here we find that the trial court's determination was not contrary to the manifest weight of the evidence, and we affirm the denial of plaintiff's petition for a change of custody. Parenthetically, we observe that John became 18 years of age on June 29, 1980, and that any question as to his custody at this time is moot.

■■ The order entered by the trial court on July 9, 1979, stated that both

Brian and John were to return immediately to defendant's custody. While we affirm the order as to John, we find that the order is without effect as to Brian who was 19 at the time and no longer subject to the court's jurisdiction to determine custody. Therefore, that portion of the order directing Brian to return to defendant's custody is reversed.

■■ Plaintiff's next contentions are that the trial court erred in refusing to require defendant to reimburse her $5,500 which she expended for their son Brian's college expense during the 1978-79 school year, in refusing to order defendant to pay Brian's future college expenses, and in refusing plaintiff maintenance payments for Brian who resides with her. The question of reimbursement of Brian's 1978-79 expenses was raised by plaintiff's petition for rule to show cause filed on March 26, 1979, and amended on May 14, 1979. The trial court granted defendant's motion to strike the amended petition with a finding that the petition was barred by a prior judgment. According to the record, the same issue had been raised by a previous petition for rule to show cause which was denied on February 2, 1979. Plaintiff did not appeal from that order. She now argues that Brian's expenses were not actually paid until March 16, 1979, and that her present demand for reimbursement presents different issues than did her earlier claim which alleged defendant's wilful failure to comply with the decree. We think plaintiff seeks a distinction where none exists. The underlying issues are the same, and the factual basis for those issues is the same. Since the court on February 2 ruled that defendant was not in contempt for failure to pay Brian's college expenses, plaintiff cannot seek the same relief for the same expenses in a second proceeding instituted six weeks later.

The petition for rule to show cause also alleged various instances when defendant interfered with plaintiff's visitation rights. It would needlessly lengthen this opinion to discuss the details of these allegations and the related evidence. We have carefully reviewed the record, and we find the evidence inadequate to establish wilful violation of the terms of the decree. Since similar matters had been previously considered by the court, we cannot say the trial court erred in striking the petition.

In addition to the petition for a rule to show cause as to college expenses already incurred, plaintiff also included in her petition to modify the decree a request that defendant be required to pay future college expenses of Brian and the other minor children.

Section 513 of the new act provides in part:

> "The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require * * *." (Ill. Rev. Stat. 1979, ch. 40, par. 513.)

Defendant testified that he had been willing to pay Brian's college expenses at Texas A & M but he would not pay Brian's expenses at Illinois

Wesleyan in Bloomington, Illinois, or his future college expenses. During his first year at Wesleyan, Brian was enrolled as a biology major and was an "A" student. According to defendant, Brian decided to attend Illinois Wesleyan after he moved in with plaintiff. Brian gave as reasons that Wesleyan is located nearer home than Texas A & M and that he might make the tennis team. Defendant mentioned that plaintiff's second husband is from Bloomington, that the Texas school offered a marine biology curriculum and a good band, and that Brian's older brothers and sisters would be nearby at Rice University.

■■ We believe the trial court abused its discretion in refusing to order defendant to pay Brian's future college expenses. The agreement incorporated into the original decree of divorce authorizes defendant "to direct the secular and religious education of the children," and defendant has relied upon that provision to justify his refusal to pay Brian's expenses. However, the agreement also provides that defendant's responsibility for his children's college and post-graduate education is to be "consistent with *the abilities and wishes of the children * * *.*" In order to give effect to both provisions, we would limit defendant's right to direct the children's education to the years that he has custody, *i.e.*, while they are minors, and we interpret the latter clause to mean that defendant cannot unilaterally dictate the choice of college and curriculum to his college-age children.·

A similar result was reached in the recent case of *In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 402 N.E.2d 348, where the husband refused to pay the college expenses of two daughters after they changed their major field of study to sociology over his opposition. In that case the divorce decree provided that the husband would contribute to the post-high school education of his children and would "have a voice in the selection of the schools and curriculum for such children." The trial court required the husband to contribute to the girls' educational expenses, and the appellate court affirmed, saying:

> "Both under prior practice and under the new Marriage and Dissolution of Marriage Act, Illinois courts have the authority to order a party in a divorce proceeding to provide support for the education of [their] children, regardless of whether the children are minors or adults. [Citations.] Moreover, it is well settled that this obligation to contribute to educational expenses is not conditioned upon a continued good relationship between parent and child or upon obtaining prior consent from the supporting parent. [Citations.] Husband, however, points to the provision of the divorce decree providing that he would have 'a voice in the selection of the schools and curriculum' for the children. He further cites the case of *Van Nortwick v. Van Nortwick* (1967), 87 Ill. App. 2d 55, 230 N.E.2d 391, for the proposition that such provisions are controlling. In our view, the facts in *Van Nortwick* are clearly distinguishable from

those in the case at bar. In *Van Nortwick* the wife selected a school, enrolled the child, paid the tuition and then sought a court order to force reimbursement from the husband. The court found it improper to present both the other parent and the court with a *fait accompli*. In the instant case, the wife unsuccessfully attempted to reach an agreement with the husband prior to incurring the expenses in question. She then petitioned the court for resolution of the impasse, again prior to the children's enrollment for the school year. This is, in effect, the preferred procedure suggested by the court in *Van Nortwick* (87 Ill. App. 2d 55, 57, 230 N.E.2d 391, 392)." 81 Ill. App. 3d 1025, 1029-30, 402 N.E.2d 348, 352.

■■ Applying the holding in *Sreenan* to the case before us, we conclude that defendant should in all fairness be required to pay Brian's future college expenses even at a school not of defendant's choice. The evidence leaves no doubt that Brian is a good student embarked upon a serious course of study and that he is deserving of the same financial assistance as his older brothers and sisters received in completing his college education. We therefore reverse that portion of the order which denied plaintiff's petition to modify the decree and remand for entry of an order providing for payment of Brian's college expenses beginning with the fall semester of 1979.

■■ Plaintiff also argues that she is entitled to maintenance for Brian because he has been residing with her. The trial court did not grant her request for Brian's maintenance, and we think the evidence totally insufficient to justify a reversal of the court's ruling. Brian is able to work, and he has the option of residing with his father. Defendant will be required to pay his college expenses. We think neither Brian nor plaintiff is entitled to more.

Finally, plaintiff insists that the trial court abused its discretion in refusing to award her attorney's fees for this litigation. Without needlessly repeating the history of these proceedings, it is our view that the trial court did not abuse its discretion.

Affirmed in part; reversed in part and remanded.

STOUDER and BARRY, JJ., concur.