FIFTH DIVISION

September 22, 2000

No. 1-99-3382

In re
 MARRIAGE OF )    

)       Appeal from

RITA CASAROTTO, )    the Circuit Court

)     of Cook County.

Petitioner-Appellant, )

)  

and )

)      No. 91-D-4178

EDMUND CASAROTTO, )  

)  

Respondent-Appellee )   

)        Honorable

(Kevin Casarotto, a Disabled Adult, )  Edmund Ponce De Leon,

)     Judge Presiding.

Appellant). )

JUSTICE THEIS delivered the opinion of the court:

At issue in this case is whether the circuit court may order visitation between a mentally disabled adult and his estranged father under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 
et seq.
 (West 1998)).  Kevin Casarotto, who was an adult at the time the visitation order at issue was entered, has Down's syndrome.  Although Kevin expressed his desire not to see his father, appellee Edmund Casarotto, the circuit court ordered visitation between Kevin and his father.  Appellants, Rita Casarotto, Kevin's guardian, and the office of the Cook County public guardian, which was appointed guardian
 ad litem
, appeal from the visitation order on Kevin's behalf, contending that the visitation provisions of the Marriage Act are applicable only to minor children and the circuit court therefore lacked subject matter jurisdiction to enter an order of visitation as to an adult disabled person.  Additionally, appellants contend it is unconstitutional to order visitation over the objections of an adult disabled person.  For the reasons that follow, we conclude that the circuit court, acting under the Marriage Act, does not have authority to enter an order of visitation with respect to a disabled adult and the order requiring visitation between Kevin and his father is therefore void for lack of subject matter jurisdiction.  As a result, we do not reach the constitutional issues raised in this appeal.

Though somewhat complex, the procedural history of this case is essential to resolution of issues raised by the parties.  Kevin Casarotto was born on July 29, 1975, to Rita and Edmund Casarotto.  In September 1993, the marriage between Rita and Edmund was dissolved.  Pursuant to the judgment in dissolution of marriage, Rita was given full custody of Kevin and Edmund was given reasonable visitation.  At the time the judgment of dissolution was entered, Kevin was 17 years old.

In September 1997, Rita was appointed as Kevin's plenary guardian and the circuit court authorized Kevin's placement in Misericordia Heart of Mercy, where he has lived since March 1998.  

In January 1998, Edmund filed a motion for modification of visitation alleging that he had not been able to see Kevin since January 1, 1997, and seeking an order specifying dates and times when visitation would occur.  On January 16, 1998, the circuit court granted Edmund's motion.  In doing so, the court noted that visitation with Edmund was in "the child's best interest" and that it had jurisdiction to modify the visitation order.  At the time this order was entered, Kevin was 22 years old.

In November 1998, Rita filed a "Second Emergency Motion to Terminate or Suspend Visitation."  Although no transcript of proceedings was included in the record on appeal, the circuit court's November 17, 1998, order set forth various factual findings.  The circuit court found that Kevin was competent to testify, that he could articulate his thoughts, and that his testimony was relevant and credible.  Valerie Casarotto, Kevin's 25-year-old sister, also testified.  The circuit court found that her testimony regarding Edmund's long history of utilizing corporal punishment gave credibility to Kevin's statements that Edmund hit him.  The circuit court further found that Edmund exercised "extraordinarily poor judgment" in taking Kevin on a spur-of-the-moment, out-of-state trip which necessitated 18 hours of driving and sleeping in the car to "teach Kevin a lesson."  Accordingly, the court found "by clear and convincing evidence" that further visitation with Edmund would endanger Kevin.  The circuit court "suspended" all visitation including telephone contact and ordered that visitation 

"[M]ay be reinstated only if: 

a. The Court appoints a 604(b) custody evaluator.

b. The evaluator recommends visitation be reinstated with the father.

c. The Court orders that visitation be reinstated and that the father comply with any recommendations made by the evaluator." 

The circuit court referred to Kevin, who was 23 years old at the time, as a "dependent child."  

On September 30, 1999, the circuit court reinstated visitation within the parameters set forth in the section 604(b) (750 ILCS 5/604(b) (West 1998)) report prepared by Dr. Abigail Sivan.  The circuit court further ordered that visitation be supervised and take place at Misericordia.  The circuit court noted that the issue before it was not whether visitation was in Kevin's best interest.  Rather, the court concluded that the issue was enforcement of the November 17, 1998, order, which had been entered by a different judge.  According to the court's interpretation of that order, visitation would be allowed if Edmund met the conditions specified therein.  The parties did not dispute that Kevin, who was 24 years old at the time the order was entered, expressed that he did not want to see his father, Edmund. 

 On appeal, Kevin contends that the circuit court lacked subject matter jurisdiction to enter a visitation order pursuant to the Marriage Act because he was no longer a minor at the time the visitation order was entered.  He also argues that the circuit court cannot constitutionally order an adult disabled person to visit with a person whom he does not wish to see. 

Our supreme court recently detailed the contours of subject matter jurisdiction in 
In re Estate of Gebis
, 186 Ill. 2d 188, 192-93, 710 N.E.2d 385, 387 (1999):

"Subject matter jurisdiction refers to a court's power both to adjudicate the general question involved and to grant the particular relief requested.  
In re M.M.
, 156 Ill. 2d 53, 64 [, 619 N.E.2d 702, 709] (1993).  Under the Illinois Constitution of 1970, the circuit court enjoys, with limited exceptions, 'original jurisdiction of all justiciable matters.'  Ill. Const. 1970, art. VI, §9.  Although the legislature may not limit the circuit court's original jurisdiction to hear a justiciable matter, it may create a justiciable matter by creating rights or duties that have no counterpart in common law or equity.  See 
M.M.
, 156 Ill. 2d at 65[, 619 N.E.2d at 710]; [citation].  In such instances, while the circuit court's original jurisdiction to adjudicate the matter derives from the constitution, the justiciable matter itself is defined by the legislature.  
M.M.
, 156 Ill. 2d at 65[, 619 N.E.2d at 710].  The legislature may define the 'justiciable matter' in such a way as to limit or preclude the circuit court's authority.  
M.M.
, 156 Ill. 2d at 65[, 619 N.E.2d at 710].  When the circuit court's power to act is controlled by statute, the circuit court is governed by the rules of limited jurisdiction and must proceed within the statute's strictures.  
M.M.
, 156 Ill. 2d at 66[, 619 N.E.2d at 710].  Any action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time.  
In re Estate of Steinfeld
, 158 Ill. 2d 1, 12[, 630 N.E.2d 801, 806] (1994)."

Contrary to Edmund’s assertion, the circuit court did not have unfettered authority to enter a visitation order with respect to Kevin pursuant to the doctrine of 
parens patriae
.  "At common law, control over a disabled adult's person and property was vested in the sovereign as 
parens patriae
, a power to which the State succeeded."  
In re Estate of Nelson
, 250 Ill. App. 3d 282, 286, 621 N.E.2d 81, 84 (1993),  citing 
In re Estate of Piech
, 117 Ill. App. 2d 403, 406, 254 N.E.2d 565 (1969).  This authority is now exercised by the courts pursuant to the Probate Act of 1975 (755 ILCS 5/1-1 
et seq.
 (West 1996)), and the courts' jurisdiction over the persons and property of disabled adults is "wholly a creature of statute." 
 Nelson
, 250 Ill. App. 3d at 286, 621 N.E.2d at 84.  See also 
M.M.
, 156 Ill. 2d at 63-

64, 619 N.E.2d at 709.  
Moreover, we note that the circuit court did not purport to be exercising its authority as 
parens patriae
 or to be acting under the Probate Act but, rather, entered the visitation order under authority of the Marriage Act.  Accordingly, the court’s power to act in the instant case is circumscribed by the strictures of the Marriage Act.  See 
M.M.
, 156 Ill. 2d at 66-67, 619 N.E.2d at 710.  Therefore, the appropriate inquiry is whether the circuit court, acting pursuant to the Marriage Act, had the power both to adjudicate the general question and to grant the particular relief requested.  See 
Gebis
, 186 Ill. 2d at 192, 710 N.E.2d at 387.  

Edmund correctly argues that the trial judge sitting in the domestic relations division of the circuit court had the power to adjudicate the general question.  The various divisions of the circuit court have equal and concurrent subject matter jurisdiction.  
In re Marriage of Wojcicki
, 135 Ill. App. 3d 248, 251, 481 N.E.2d 939, 941 (1985).  Therefore, the judge sitting in the domestic relations division of the circuit court constitutionally has the authority to hear all justiciable matters.  
Wojcicki
, 135 Ill. App. 3d at 251, 481 N.E.2d at 941.  However, because the court purported to act under the Marriage Act, the court's authority to act with respect to granting the particular relief requested is governed by the provisions of that statute.  
Gebis
, 186 Ill. 2d at 195, 710 N.E.2d at 388; 
Wojcicki
, 135 Ill. App. 3d at 252, 481 N.E.2d at 941.

In the instant case, the circuit court lacked subject matter jurisdiction because, under the Marriage Act, it did not have the authority to grant an order of visitation as to an adult disabled person, which was the particular relief requested.  
The visitation provision of the Marriage Act provides that, where the custodial parent's street address is not provided, as in the instant case, "the court shall require the parties to identify reasonable alternative arrangements for visitation by a non-custodial parent, including but not limited to visitation 
of the minor child
 at the residence of another person or at a local public or private facility."  (Emphasis added.)  750 ILCS 5/607(a) (West 1998).  The plain and ordinary meaning of the statutory language clearly shows that the visitation provisions of the Marriage Act are inapplicable to Kevin, who is no longer a minor.  Our conclusion is buttressed by the fact that, under the Marriage Act, the circuit court lacks jurisdiction to enter custody orders with respect to children who have attained majority (see 
Willcutts v. Willcutts
, 88 Ill. App. 3d 813, 818, 410 N.E.2d 1057, 1061 (1980) (court lacks jurisdiction to enter custody order with respect to 19-year-old)).  As visitation is a form of child custody (
M.M.
, 156 Ill. 2d at 62, 619 N.E.2d at 708, citing 
In re Adoption of Schumacher
, 120 Ill. App. 3d 50, 52, 458 N.E.2d 94, 96 (1983))
, it follows that the court similarly lacks jurisdiction under the Marriage Act to enter a visitation order against a person who has attained majority.  Finally, if the legislature had intended the visitation provisions to apply to disabled adults, it would have been a simple matter to so specify.  For example, section 513 of the Marriage Act (750 ILCS 5/513 (West 1998)) provides for the support of "non-minor children."  There is no similar language in either the custody or visitation provisions of the Marriage Act.  

Although this may appear unduly technical, the consequences of a contrary result are significant.  Under the Marriage Act, the applicable standard in determining custody decisions is "the best interest of the child" (750 ILCS 5/602 (West 1998)) and the 

noncustodial parent is entitled to visitation unless "visitation would endanger seriously the child's physical, mental, moral or emotional health" (750 ILCS 5/607(a) (West 1998)).  In accordance with these provisions, the judgment in dissolution of marriage placed Kevin, who was then 17 years old, in Rita's custody and granted Edmund reasonable visitation.  Kevin, however, is no longer a child.  Moreover, his current need for a guardian stems from his disability and is unrelated to the dissolution of his parents' marriage.  Although an adult with a mental disability may not function at an age-appropriate mental level, the disability does not render the adult a child.  Moreover, the needs of a mentally disabled adult are not the same as the needs of a child. 

The Probate Act explicitly recognizes that different considerations apply with respect to minors and adult disabled persons.  Under the Probate Act, the statutory requirements for appointment of a guardian for an adult disabled person are separate and distinct from the statutory requirements for appointment of a guardian for a minor.  Article XI of the Probate Act, entitled "Minors" (755 ILCS 5/11-1 
et seq.
 (West 1998)), addresses guardianship issues with respect to minors, who are defined as those persons who have not attained 18 years of age.  Appointment of a guardian and visitation issues are both determined under the "best interest of the minor" standard.  755 ILCS 5/11-5, 11-7.1 (West 1998). 

By contrast, Article XIa of the Probate Act, entitled "Guardians for Disabled Adults" (755 ILCS 5/11a-1 
et seq.
 (West 1998)), addresses guardianship issues with respect to disabled persons who are defined, in part, as persons 18 years of age or older who, because of a developmental disability, are not fully able to manage their persons or estates.  The subject of a guardianship petition has rights that are not afforded to minors, including the right to notification of the proceedings and the right to inform the judge whom he prefers to act as guardian.  See 755 ILCS 5/11a-10 (West 1998).  The guardian is to "assist the ward in the development of maximum self-reliance and independence."  755 ILCS 5/11a-17(a) (West 1998).  Critically, in making decisions on behalf of an adult disabled person, the guardian shall make reasonable efforts to discern the ward’s preferences and make decisions in accordance therewith.  755 ILCS 5/11a-17(e) (West 1998).  When Kevin attained majority, Rita ceased to be Kevin’s custodian and neither she nor the court was authorized to exercise authority over Kevin pursuant to the Marriage Act.  Subsequently, Rita was appointed Kevin’s guardian pursuant to Article XIa of the Probate Act.  The circuit court’s authority with respect to guardianship issues is derived from the Probate Act.  Accordingly, it may exercise subject matter jurisdiction with respect to Kevin only to the extent that it is authorized to do so under that statute.

Relying on 
In re Estate of Steinfeld
,
 158 Ill. 2d 1, 630 N.E.2d 801 (1994), Edmund argues that the circuit court should be affirmed because it could have entered a visitation order pursuant to the Probate Act.  That the circuit court may have had authority to grant the requested relief under the Probate Act does not cure the jurisdictional defect in this case.  The circuit court did not purport to enter the visitation order under the provisions of the Probate Act applicable to adult disabled persons.  Rather, the circuit court repeatedly and mistakenly referred to Kevin as a child and applied the standards applicable to children under the Marriage Act.  Edmund asks this court to determine the propriety of a visitation order entered pursuant to the Probate Act when, in fact, no such order is before this court.  

Similarly, we do not address Kevin's contention that it is unconstitutional to order visitation over the objections of an adult disabled person.  The order before this court is void for lack of subject matter jurisdiction and no visitation order has been entered pursuant to the Probate Act or any other provision.  Accordingly, this court will not reach out and address whether such an order, if entered, would pass constitutional muster. 

Next, Edmund argues that this court lacks jurisdiction to consider this appeal because Kevin's notice of appeal, filed October 29, 1999, was not timely.  According to Edmund, because Kevin did not appeal from orders entered in January 1998, June 1998, and November 1998, he is now precluded from challenging the visitation order entered on September 30, 1999.  In essence, Edmund is arguing that Kevin has waived his right to contest subject matter jurisdiction in this case.  However, as previously stated, subject matter jurisdiction may be raised at any time.  
Gebis
, 186 Ill. 2d at 193, 710 N.E.2d at 387, citing 
Steinfeld
, 158 Ill. 2d at 12, 630 N.E.2d at 806.  Thus, this argument must fail.  

Finally, we note that the brief and reply brief submitted by the public guardian are riddled with pejorative characterizations of the appellee and the circuit court.  The tone of the briefs is both unprofessional and unwarranted, and we admonish the public guardian to discontinue this practice.

For the reasons previously stated, the order of visitation is void and the judgment of the circuit court is vacated.

Judgment vacated.

QUINN, P.J., and GREIMAN, J., concur.