*In re* MARRIAGE OF JAMES L. SPEAR, Petitioner-Appellee, and
TRINDA L. SPEAR, Respondent-Appellant.

Fourth District   No. 4—92—0870

Argued April 13, 1993.—Opinion filed May 6, 1993.—
Rehearing denied June 3, 1993.

Curt W. Ferguson (argued), of the Rutherford Institute, of Salem, and
Duane D. Young, of Heckenkamp, Simhauser & La Barre, P.C., of Spring-
field, for appellant.

John W. Foltz (argued), of Glasgow Law Office, P.C., of Monticello, for
appellee.

JUSTICE COOK delivered the opinion of the court:
This appeal is from an order of the circuit court of Douglas
County denying Trinda Spear's petition for contribution from James
Spear to the college expenses of their emancipated child, Patience.
We affirm.

James and Trinda Spear were married April 18, 1970. They have
two children, Stephen and Patience. On February 18, 1986, the trial
court entered a written order dissolving the parties' marriage. In the

order the trial court approved a marital settlement agreement, awarded custody of the minor children to Trinda, and ordered James to pay unallocated child support and maintenance of $200 per week. On May 25, 1989, the trial court reduced the weekly child support and maintenance payment to $135 based in part on Stephen reaching majority. On June 18, 1991, after Patience reached majority, James filed a motion to terminate unallocated child support and maintenance. On July 5, 1991, Trinda filed a petition to modify the judgment of dissolution asking for a contribution from James to Patience's upcoming college expenses. On November 7 James filed a motion for temporary abatement of child support and maintenance because of a temporary loss of income due to a strike by his union. James filed a response to the petition to modify on the day of the hearing, December 2, alleging Patience was enrolled at Indiana Bible College, a nonaccredited institution, and that Patience's curriculum was not specifically training her for any particular career or occupation.

At the hearing on the petition James and Trinda both testified. Evidence established that during the spring of 1991 Patience was deciding where to go to college and she discussed her decision with James and Trinda. Trinda testified that Lakeland College and Indiana Bible College were the two primary colleges under consideration, and that Patience eventually decided to attend Indiana Bible College starting in the fall of 1991. Trinda stated that Patience applied for a scholarship and wrote an essay explaining why she wanted to attend Indiana Bible College; the trial court sustained an objection to the admission of the essay. James testified he had understood that Patience was going to attend Lakeland College in a program where she would learn to help handicapped children. He did not find out she would attend Indiana Bible College until a week before her enrollment. James stated he did not object to Patience going to college "if she does something that will help her in the future," and was accordingly concerned about Patience going to Indiana Bible College:

> "Well, I don't think—as far as Bible College, Bible College won't hurt her; I've got nothing against the [B]ible, but the classes she's informed me she's taking doesn't—and she's even made the statement, it will not qualify her to be a receptionist or secretary or anything."

Trinda felt Indiana Bible College "has helped [Patience] to grow up and mature even in the short time that she's been there." Trinda indicated she feels the strong points about Indiana Bible College are as follows:

"It gets her—I believe that it gets her into the world without being totally on her own; that she has some supervision and gets her established in herself before she has to—you know she will eventually probably want to go to a secular school, at least a couple of years. But I feel like from the way she's expressed to me what she wants, that this is a good place for her to start."

The testimony indicated Indiana Bible College is located in one building with supervisors in every hall, organized activities, rules, regulations, and curfews. Trinda described Patience's fall semester freshman classes as three hours of Soteriology (theology dealing with salvation), three hours of Old Testament Survey, two hours of Orientation of Christian Living, three hours of English, one hour of Chapel, and one hour of Journalism. Trinda admitted that Indiana Bible College is not accredited and that the credits Patience earned are not transferable. She also stated the curriculum Patience is taking is probably not training her for any secular occupation. Indiana Bible College has programs lasting two, three, or four years, but there was no testimony which program Patience was pursuing. Patience was not present at the hearing and, therefore, did not testify.

The trial court terminated the unallocated child support and maintenance, and denied Trinda's petition to modify for college expenses. The trial court stated:

"Well, cutting through everything, I don't think that this course of study as Patience is engaging in, is what is designed by Section 513. It may be beneficial for her spiritual[ly] and benefit her soul, but it does not prepare her to do anything. [Section] 513 talks of college education, professional or other training after high school or while still attending high school it can be ordered to continue.

These credits that she's earning at this institution are non-transferable; it's not an accredited institution; it does not prepare her to make a livelihood in the secular world or to do anything in the secular world.

If this were an institution that was accredited, and by way of example, and I don't mean to endorse like Parkland or Lake Land or the University of Illinois, or Eastern Illinois, but a college whereby upon completion she would be prepared to do something, it would be a different situation."

On January 3, 1992, Trinda filed a motion for rehearing or to vacate judgment. On January 17 Trinda filed an affidavit from "a high-level administrator of Indiana Bible College" stating that "I have

more requests from employers seeking our graduates to fill paying jobs than I can fill with the number of graduates available." In addition the administrator stated "academic credits earned by students of Indiana Bible College *** are routinely accepted at other institutions, many of which are accredited by national accrediting agencies." James filed a motion to dismiss alleging the motion for rehearing or to vacate was not timely filed. James' motion was denied. On September 28, the trial court denied Trinda's motion, stating there was no showing of a benefit to Patience except that she was maturing at Indiana Bible College. Trinda filed a timely appeal.

■ James argues this court lacks jurisdiction to review the decision of the trial court because Trinda did not file her motion for rehearing or to vacate judgment within 30 days of the judgment order. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—1203.) The trial court properly found the motion timely, based on a certificate of service indicating the motion was mailed to the parties within the allowed 30 days, and representation of counsel at hearing that the motion was mailed to the court the same day. See *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 852, 493 N.E.2d 1088, 1090.

On the merits, Trinda argues the trial court unlawfully interfered with her authority as custodial parent to direct the education of her child. (See *Wisconsin v. Yoder* (1972), 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526; *In re Marriage of Tisckos* (1987), 161 Ill. App. 3d 302, 310, 514 N.E.2d 523, 528.) We find no such issue here, where Patience is an adult, and the trial court is not interfering with her decision to go to Indiana Bible College. The proper focus is whether the trial court abused its discretion (*In re Support of Pearson* (1986), 111 Ill. 2d 545, 551, 490 N.E.2d 1274, 1277) in finding that James was not required to contribute to Patience's college education in accordance with section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act), which provides:

> "The court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age ***. The authority under this Section to make provision for education and maintenance extends not only to periods of college education or professional or other training after graduation from high school but also to any period during which a child of the parties is still attending high school, even though he or she attained the age of 18." Ill. Rev. Stat. 1991, ch. 40, par. 513.

The trial court must decide whether to order a contribution for educational expenses of an emancipated child based on "all relevant

factors," including the financial resources of the parents and the child, and the standard of living the child would have enjoyed had the marriage not been dissolved. (Ill. Rev. Stat. 1991, ch. 40, pars. 513(a), (b), (c).) Not every family chooses to send its children to college. A child does not have an absolute right to a college education. We find relevant factors for the trial court to consider would include (1) the cost of the school (*Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 947, 414 N.E.2d 77, 82; *Pearson*, 111 Ill. 2d at 552, 490 N.E.2d at 1277), (2) the programs offered at the school (*Pearson*, 111 Ill. 2d at 552, 490 N.E.2d at 1277; see also *Willcutts v. Willcutts* (1980), 88 Ill. App. 3d 813, 819, 410 N.E.2d 1057, 1062), (3) the child's scholastic aptitude (*Greiman*, 90 Ill. App. 3d at 946, 414 N.E.2d at 81), (4) how the school meets the child's goals (see *In re Marriage of Harsy* (1990), 193 Ill. App. 3d 415, 423, 549 N.E.2d 995, 999-1000; *Jenks v. Jenks* (Mo. 1964), 385 S.W.2d 370, 378 ("the child is being afforded an education reasonably adapted to her capacity and aptitude, at an accredited institution")), and (5) the benefit the child will receive from attending the school (see *Harding v. Harding* (1978), 59 Ill. App. 3d 25, 28, 374 N.E.2d 1304, 1307 ("[t]he benefits of attendance at, as distinct from graduation from a college or university, are intangible and we decline to measure one against the other"); *Willcutts*, 88 Ill. App. 3d at 820, 410 N.E.2d at 1062 ("Brian is a good student embarked upon a serious course of study [at Illinois Wesleyan University]")). While some of these factors overlap, we believe they are the concerns that would have been addressed by the parents, had they not divorced, before spending their money to help their child attend college, professional school, or other training after high school. See *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 580, 376 N.E.2d 1382, 1390; *Pearson*, 111 Ill. 2d at 551, 490 N.E.2d at 1277; *Ingrassia v. Ingrassia* (1987), 156 Ill. App. 3d 483, 497, 509 N.E.2d 729, 739.

Here, James discovered that Patience was going to attend Indiana Bible College one week before she planned to enroll, and he expressed his objection to her decision. He expressed concerns that (1) Indiana Bible College is unaccredited, (2) her credits may not be transferable, and (3) the curriculum Patience is taking does not prepare her to do anything. While we disagree with James' claim that the curriculum is not preparing Patience to do anything, James expressed reasonable concerns which the trial court properly considered in denying Trinda's motion for college expenses. Trinda explained that Indiana Bible College was a good place for Patience to mature after high school before going to a different "secular school." While a more protected environment at a school teaching "Christian living" may be helpful to a re-

cent high school graduate, the trial court had to decide whether James should contribute to these expenses, when Patience might later decide to go to a secular college. That concern is particularly important given the evidence that Indiana Bible College is unaccredited, and credits may not transfer to other colleges. In addition, there was no testimony regarding Patience's goals and interests (other than testimony from James that she was interested in helping handicapped children), and how Indiana Bible College fits into her plans. While a student attending college as a freshman often will not have a definite direction, in this case there was no evidence that Indiana Bible College met Patience's educational needs, other than testimony that it helped her mature.

■ Trinda attached an affidavit to her motion to vacate, from a "high-level administrator" at Indiana Bible College, which stated job placement for Indiana Bible College graduates is not a concern and that Indiana Bible College credits are accepted by many accredited schools. Although the issue has not been raised on appeal, it appears this testimony could have been produced at trial and the trial court, therefore, need not have considered it for the first time in a post-trial motion. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1203; see *In re Marriage of Davis* (1991), 215 Ill. App. 3d 763, 776, 576 N.E.2d 44, 53.) Only if diligence has been shown need a court consider whether the presence of disputed affidavits requires an evidentiary hearing. (See *In re Marriage of Fricke* (1988), 174 Ill. App. 3d 191, 195-96, 528 N.E.2d 370, 373; *In re Marriage of Frazier* (1990), 203 Ill. App. 3d 847, 854, 561 N.E.2d 160, 165.) In any event the affidavit here did not require the trial court to change its ruling. The statement that the administrator had more requests from employers than he could fill was only a conclusion. It would have been more helpful if the administrator had stated an employment rate for graduating students. Despite the affidavit's general comments about acceptance of credits by other schools, it remains clear that Indiana Bible College is not accredited.

■ The trial court did not abuse its discretion in denying Trinda's petition for college expenses considering the factors outlined above. We disagree with Trinda's contention the trial court's decision favors secular schools over religious schools. We make no attempt to compare the benefits of Bible college and secular schools; we focus instead on the propriety of the school for the particular student based on "all relevant factors." (See Ill. Rev. Stat. 1991, ch. 40, par. 513.) For example, a trial court might find it unreasonable for a student who intends to go to medical school to start a two-year curriculum at

an unaccredited junior college. Here, if Patience had expressed a strong desire to pursue a religious vocation such as working as a missionary or a pastor, her choice to attend a Bible college might be a logical one, and the focus would then shift to other relevant factors such as the financial resources of her parents. The testimony at trial, however, indicated that Patience would probably go to a secular school after Indiana Bible College, even though there were questions whether any of her credits would transfer.

Accordingly, we affirm the decision of the circuit court of Douglas County denying Trinda's request for contribution from James to Patience's college expenses at Indiana Bible College.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.